UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
MICHAEL DENNETT,                   )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 12-424-S
                                   )
MICHAEL ARCHULETA,                 )
JAMAL ALSAFFAR,                    )
LAURIE HIGGINBOTHAM,               )
ARCHULETA & ASSOCIATES, P.C,       )
d/b/a/ ARCHULETA, ALSAFFAR &       )
HIGGINBOTHAM, JOHN DOE(S),         )
ABC PARTNERSHIP(S), AND            )
DEF CORPORATION(S),                )
                                   )
        Defendants.                )
_____)

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the motion is DENIED.

I.   Facts

In 2009, Michael Dennett, a resident of Middletown, Rhode Island, was being treated by the Providence Veterans Affairs Medical Center (the "Providence VA") in Providence, Rhode Island when test results showed elevated levels of a prostate-specific antigen ("PSA").  (First Am. Compl. ¶ 1, ECF No. 7; Pl.'s Obj.

to Defs.' Mot. to Dismiss the Pl.'s First Am. Compl. ("Pl.'s Obj.") 4, ECF No. 13.)  Due to the high PSA, the Providence VA biopsied Dennett's prostate on May 27, 2009.  (First Am. Compl. ¶ 12.)  Dennett was informed that the samples tested positive for prostate cancer, so on June 18, 2009, his prostate was removed.  (Id. ¶¶ 13-14.)  Post-operative tests, however, revealed that Dennett did not have prostate cancer.  (Id. ¶ 15.)  An investigation into the discrepancy between the two test results led to a comparative DNA test of the tissue samples which revealed that the Providence VA had switched Dennett's biopsy sample with another patient's sample, and it was this patient, not Dennett, who had prostate cancer.  (Id. ¶¶ 16-17.)  This misdiagnosis and unnecessary surgery not only left Dennett without a prostate but also left him with infection, painful fluid collection in his pelvis, incontinence, and impotence.  (Id. ¶ 22.)

Dennett began searching for an attorney who would file suit against the Providence VA on his behalf and found the website of Defendant Archuleta, Alsaffar & Higginbotham ("AA&H"), a Texas law firm specializing in Federal Tort Claims Act ("FTCA") cases.  (Id. ¶¶ 5, 19.)  Attorneys at AA&H include Defendants Michael Archuleta, Jamal Alsaffar, and Laurie Higginbotham (together, with AA&H, the "Defendants"), all of whom reside in Texas and are licensed to practice law in Texas.  (Id. ¶¶ 2-4.)  None of

2

the Defendants are licensed in Rhode Island. (Id. ¶ 9.) Still, AA&H's website offers to "represent [clients] regardless of where [they] live" and states that the firm "handle[s] claims in all 50 states." (Id. ¶ 8.) Indeed, AA&H's website has a section devoted to results where it describes the different forums and cases in which it has participated. (Pl.'s Obj. 8-9.)

Based on his review of the website and multiple correspondences with AA&H, Dennett decided to retain AA&H to represent him in his FTCA claim against the Providence VA for medical malpractice. (First Am. Compl. ¶ 19.) As part of this process, Dennett sent a number of documents to Defendants in Texas for review, including medical records, a narrative of how the experience had affected him, responses to Defendants' client questionnaire, and copies of communications between Dennett and the Department of Veterans Affairs. (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Pl.'s First Am. Compl. ("Defs.' Mem. of Law") Ex. B, ¶ 22, ECF No. 12.) Dennett also signed a Letter of Representation on October 16, 2009, and a written contract on October 19, 2009. (First Am. Compl. ¶ 19.) Both of these documents were signed by Dennett in Rhode Island. (Pl.'s Obj. Ex. 1 ("Aff. of Michael Dennett") ¶¶ 21-22.) Though the representation was explicitly limited to Dennett's FTCA claims, Defendants promised to help Dennett locate a local

attorney to pursue other avenues of recovery, such as individual suits against the non-affiliated doctors and surgeons.

On October 29, 2009, Defendants filed two claims pursuant to the FTCA – one with the Providence VA and one with the Providence VA Regional Office. (First Am. Compl. ¶ 20.) In connection with these claims, Defendants communicated from their Texas office with both the Department of Veterans Affairs in Providence and Dennett. (Defs.' Mem. of Law Ex. B ¶ 25.) At Defendants' request, the claims were administratively transferred on March 23, 2010 to the VA Office of General Counsel in Washington, D.C. (the "Washington VA") because the Washington office had the authority to settle for larger amounts than the Providence branch did. (First Am. Compl. ¶ 21.) Negotiations continued outside of Rhode Island between Defendants (in Texas) and the Washington VA, and on August 3, 2010, Defendants settled Dennett's claim for $300,000. (Id. ¶¶ 25, 27.) Dennett signed the settlement agreement in Rhode Island. (Aff. of Michael Dennett ¶¶ 36-37.) Following the settlement, Dennett contacted Defendants to follow up on Defendants' earlier promise to locate a Rhode Island attorney who could help Dennett pursue additional claims against the individual physicians and surgeons; Defendant Archuleta put Dennett in contact with his current counsel. (First Am. Compl. ¶¶ 24, 28.)

Dennett eventually became unhappy with the settlement negotiated by Defendants and filed suit for legal malpractice in Rhode Island Superior Court on May 2, 2012. Defendants subsequently removed the case to this Court. (Id. ¶¶ 10-11.) On July 23, 2012, Defendants filed the instant motion to dismiss for lack of personal jurisdiction. (Defs.' Mot. to Dismiss the Pl.'s First Am. Compl., ECF No. 10.)

II. Discussion

When a defendant challenges the Court's jurisdiction over him, the First Circuit applies the prima facie standard to determine whether personal jurisdiction is proper. Hainey v. World AM Commc'ns, Inc., 263 F. Supp. 2d 338, 341 (D.R.I. 2003). This approach places the burden on the plaintiff to "make the showing as to every fact required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution.'" Id. (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)); see also Henry v. Sheffield, 749 F. Supp. 2d 3, 9 (D.R.I. 2010). Because Rhode Island's long-arm statute claims jurisdiction to the maximum extent permitted by the Fourteenth Amendment,[1] however, "the question becomes whether asserting personal jurisdiction over Defendants is consistent

---

[1] Rhode Island General Laws section 9-5-33(a) states that a defendant "shall be subject to the jurisdiction of the state of Rhode Island . . . in every case not contrary to the provisions of the constitution or laws of the United States." R.I. Gen. Laws § 9-5-33(a).

5

with the Due Process Clause." Hainey, 263 F. Supp. 2d at 341 (citing Almeida v. Rodavsky, 506 A.2d 1373, 1374 (R.I. 1986)). In making this determination, the Court must "accept[] the plaintiff's properly documented evidentiary proffers as true." Id. (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002); Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

Under the Due Process Clause, personal jurisdiction exists when there are "minimum contacts between a nonresident defendant and the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Ne. Land Servs., Ltd. v. Schulke, 988 F. Supp. 54, 57 (D.R.I. 1997) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). This can be established through one of two ways: general personal jurisdiction or specific personal jurisdiction. Dennett's argument, however, emphasizes specific personal jurisdiction over Defendants.[2] Specific personal jurisdiction is established through a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum

---

[2] Dennett's papers do argue for both general and specific personal jurisdiction, but the Court finds no evidence to support a finding of general personal jurisdiction.

6

> state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Hainey, 263 F. Supp. 2d at 341-42 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995)).

    A.    Relatedness

The first prong, relatedness, "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Id. at 342 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)). It is met if "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Id. (quoting Daynard, 290 F.3d at 61).

Here, Defendants' contacts with Rhode Island are intimately related to Dennett's claim. Dennett retained Defendants to represent him in an FTCA case arising out of a botched diagnosis and operation by the Providence VA. The diagnosis occurred in Rhode Island, as did the operation; thus any fact gathering and discovery – a necessity regardless of whether the case went to trial or settled early – would have necessarily involved Defendants establishing contacts in Rhode Island. Moreover, under the FTCA, Dennett was required to file suit in the United States District Court for the District of Rhode Island, which would in turn be required to apply Rhode Island substantive law.

See 28 U.S.C. §§ 1402, 1346(b)(1). As a result, Defendants' preparation of the case must have (or at least should have) included researching Rhode Island law. This is especially true with respect to damages, the key issue at play during the settlement negotiations. It is hard to argue that these contacts with Rhode Island are unrelated for jurisdictional purposes.

Indeed, at oral argument Defendants essentially conceded that these contacts would ordinarily be sufficient to establish specific personal jurisdiction. According to Defendants, however, the Court is presented with a unique situation because the First Amended Complaint only alleges malpractice arising from the narrow act of specifically negotiating the settlement amount with the Washington VA. Any contacts with Rhode Island are therefore irrelevant to Dennett's claim, they contend, because there is no allegation that Defendants did anything wrong related to the information gathering and case workup, actions that would undoubtedly implicate contacts with Rhode Island. This argument, while creative, is unpersuasive.

First, Defendants construe the First Amended Complaint too narrowly. In Count I, the First Amended Complaint states that "Defendants failed to exercise the degree of skill and diligence required of such average attorneys and negligently caused Plaintiff to negligently compromise Plaintiff's claims for far

8

less than they were worth" and that "Defendants' negligence includes, but is not limited to, consummating an inadequate settlement payment from the United States . . . and failing to inform Plaintiff of the fair and reasonable value of his claim." (First Am. Comp. ¶¶ 32-33.) These allegations go well beyond the narrow claim of malpractice articulated by Defendants and encompass the Rhode Island contacts necessary to prepare for the settlement. The remaining counts are even less helpful to Defendants. Counts II and III, involving allegations that Defendants failed to obtain informed consent from Dennett, go well beyond a failure to properly negotiate with the Washington VA. (Id. ¶¶ 35-39.) And Count IV, which alleges the unauthorized practice of law, clearly implicates Rhode Island activity. (Id. ¶¶ 40-43.)

Second, Defendants' reliance on Sawtelle v. Farrell, for the proposition that in-forum contacts are not relevant where a settlement negotiation occurs out-of-forum, is misplaced. In Sawtelle, New Hampshire residents, acting as the administrators of the estate of a pilot who died in a plane crash, brought a wrongful death action in Florida. 70 F.3d at 1386. The case settled. The plaintiffs subsequently learned that the estate of another victim of the same plane crash settled for more than twice as much as their claim. Id. at 1386-87. Angered by this substantial discrepancy, they filed a legal malpractice claim

9

against their California-based attorneys in New Hampshire. The First Circuit recognized that while there were contacts between the defendant law firm and New Hampshire during the legal representation, very few were related to the plaintiffs' legal malpractice claim and thus were not to be considered for jurisdictional purposes. Id. at 1389. According to the court, the only relevant New Hampshire contact was the transmission of information via telephone or mail, and this was not enough to support personal jurisdiction. Id. at 1389-90. The relevant jurisdictional contact, meanwhile, was "the defendants' investigation, in Florida and Virginia, which informed their judgment about the amount and propriety of the proposed settlement. In short, it was the aggregate of the defendants' allegedly negligent acts and omissions which caused the Florida injury, and the out-of-forum negligence was the effective cause." Id. at 1390.

The alleged injury in Sawtelle - the consummation of an inadequate settlement amount - is the same allegation made by Dennett. Contrary to Defendants' argument, however, Sawtelle does not support their position. While the First Circuit did acknowledge that not every contact is relevant for jurisdictional purposes, it also emphasized that pre-settlement investigation into the case is the necessary contact for allegations of an inadequate settlement. See id. The reason

10

personal jurisdiction did not exist in New Hampshire was because the pre-settlement investigation took place in Virginia and Florida and implicated Virginia and Florida law. Here, by contrast, all of the pre-settlement investigation and preparation involved Rhode Island and no other forum. So while it is true that the actual settlement negotiation took place between Texas and Washington, D.C., the critical pre-settlement activities, which led to the settlement, all occurred in Rhode Island.

Case law throughout the country supports this conclusion. To support their respective positions, both parties cite to a number of cases (often the same ones) involving out-of-forum attorneys being sued for malpractice who allege lack of personal jurisdiction in the forum. See generally Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284 (1st Cir. 1999); Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996); Sawtelle, 70 F.3d 1381; Klump v. Duffus, 71 F.3d 1368 (7th Cir. 1995); Sher v. Johnson, 911 F.2d 1357 (9th Cir. 1990); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law, 787 F.2d 7 (1st Cir. 1986); Wadlington v. Rolshouse, Civ. Action No. 3:05CV-558-H, 2008 WL 1712293 (W.D. Ky. Apr. 9, 2008); Litchfield Fin. Corp. v. Buyers Source Real Estate Grp., 389 F. Supp. 2d 80 (D. Mass. 2005); Allen v. James, 381 F. Supp. 2d 495 (E.D. Va. 2005); Alonso v. Line, 846 So. 2d 745 (La.

11

2003); Cerberus Partners, L.P. v. Gadsby & Hannah, LLP, 836 A.2d 1113 (R.I. 2003). Though personal jurisdiction is a fact-specific inquiry, and no two cases are identical, a thorough reading of all these cases reveals a common theme: where the legal malpractice claim is filed in the same forum as the original action serving as the predicate for the legal malpractice (or where it would have been filed), jurisdiction is found; where the legal malpractice claim is filed in a different forum, jurisdiction is lacking. Here, Dennett filed his legal malpractice claim in Rhode Island, the same forum that his medical malpractice claim was statutorily required to be filed in. Regardless of the fact that the settlement talks occurred between Texas and Washington, D.C., the claim is directly related to and arises out of Defendants' contacts with Rhode Island, and thus the relatedness prong is satisfied.

    B.   Purposeful Availment

Next is purposeful availment, which looks at the voluntariness and foreseeability of a defendant's contacts and actions. Hainey, 263 F. Supp. 2d at 343 (quoting Sawtelle, 70 F.3d at 1391). This prong is met if the defendant should "reasonably anticipate being haled into court" in the jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

There is little doubt that Defendants purposely availed themselves of the benefits of Rhode Island. They created a website offering to "represent [clients] regardless of where [they] live" and to "handle claims in all 50 states." The website specifically listed the Providence VA. And while merely creating this website to solicit business is not enough to establish personal jurisdiction, see, e.g., McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005), agreeing to represent Dennett is. Defendants made themselves out to be a nationwide law firm representing clients throughout the country. With the benefits of a nationwide law practice come certain risks. When Dennett responded to the website and retained Defendants to represent him in his Rhode Island FTCA case, Defendants voluntarily agreed to investigate his Rhode Island claim, to communicate with Dennett and potential witnesses in Rhode Island, to initiate settlement discussions in Rhode Island, and to file suit in Rhode Island if settlement talks proved fruitless. From the moment Defendants agreed to represent Dennett, they purposefully availed themselves of the opportunity to practice law in Rhode Island and to profit from the Providence VA's malpractice. It was entirely foreseeable that if something were to go wrong with the representation, Defendants could be haled into court in Rhode Island. That the ultimate settlement occurred with representatives in Washington, D.C. is irrelevant.

C.  The Gestalt Factors

Finally, the Court must determine if it is fair and/or reasonable for the state to assert specific personal jurisdiction. The First Circuit has enumerated five "Gestalt" factors to be used in evaluating this element: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Hainey, 263 F. Supp. 2d at 343 (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 717 (1st Cir. 1996) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985))). These factors are a sliding scale, often used as a tie-breaker to tip the jurisdictional decision one way or another. See Ticketmaster-New York, 26 F.3d at 210.

No "tie-breaker" is needed here. Like the relatedness and purposeful availment prongs, the Gestalt factors also support a finding of personal jurisdiction. While Defendants do face a burden by having to travel to Rhode Island, this burden is greatly diminished by modern transportation. Moreover, if jurisdiction in Rhode Island did not exist, Defendants could still be subject to jurisdiction in Washington D.C., which would be as burdensome as Rhode Island. The remaining four factors

14

all favor Rhode Island jurisdiction. Rhode Island has an interest in adjudicating this dispute as it involves a Rhode Island citizen, a Rhode Island medical facility, doctors and surgeons living and practicing in Rhode Island, and the practice of law by out-of-forum attorneys applying Rhode Island law and affecting Rhode Island citizens. Moreover, because Rhode Island law applies, the nature of this type of suit will require experts knowledgeable on Rhode Island law, specifically damage amounts. All of these factors make Rhode Island the most convenient and effective forum to resolve the dispute, and neither Texas nor Washington, D.C. has the same level of interest.

III. Conclusion

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  January 11, 2013