UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
MICHAEL DENNETT,               )
                               )
        Plaintiff,             )
                               )
    v.                         )   C.A. No. 12-424-S-PAS
                               )
MICHAEL ARCHULETA,             )
JAMAL ALSAFFAR,                )
LAURIE HIGGINBOTHAM,           )
ARCHULETA & ASSOCIATES, P.C.,  )
d/b/a ARCHULETA, ALSAFFAR &    )
HIGGINBOTHAM,                  )
JOHN DOE(S),                   )
ABC PARTNERSHIP(S), AND        )
DEF CORPORATION(S),            )
                               )
        Defendants.            )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court is Defendants' motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Having unsuccessfully sought dismissal of the entire action, see Dennett v. Archuleta, 915 F. Supp. 2d 248 (D.R.I. 2013), Defendants now take a piecemeal approach and seek to eliminate just those claims accusing them of the unauthorized practice of law through this motion. As set forth below, because issues of material fact remain, the motion is DENIED.

I.  Background

In 2009, Plaintiff Michael Dennett, a resident of Middleton, Rhode Island, received troubling news from the doctors treating him at the Providence Veterans Affairs Medical Center (the "Providence VA") in Providence, Rhode Island.[1] (First Am. Compl. ¶ 1, ECF No. 7.)  Tests revealed elevated levels of prostate-specific antigen ("PSA") and a biopsy was necessary.  (Id. at ¶ 12.)  Dennett's fears were confirmed when the biopsy results returned with a diagnosis of prostate cancer. (Id. at ¶ 13.)  Surgeons removed Dennett's prostate, and then made a surprising discovery – Dennett did not suffer from prostate cancer after all.  (Id. at ¶¶ 14-15.)  An investigation revealed that the Providence VA had switched Dennett's biopsy sample with another patient's sample, and it was this patient, not Dennett, who had prostate cancer.  (Id. at ¶¶ 16-17.)  This misdiagnosis and unnecessary surgery not only left Dennett without a prostate but also left him with infection, painful fluid collection in his pelvis, incontinence, and impotence. (Id. at ¶ 22.)

Recognizing that he should be compensated for this error, Dennett sought out legal representation.  As part of his search,

---

[1] When analyzing a case for judgment on the pleadings, the Court must take the facts as they are in the pleadings and draw all favorable inferences in favor of the non-moving party. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).

Dennett encountered the website of Archuleta, Alsaffar & Higginbotham ("AA&H"), a Texas law firm specializing in Federal Tort Claims Act ("FTCA") cases. (Id. at ¶¶ 5, 19.) Attorneys at AA&H include Defendants Michael Archuleta, Jamal Alsaffar, and Laurie Higginbotham (together, with AA&H, the "Defendants").

Of chief importance for this motion are those actions undertaken by the Defendants that implicate the practice of law. From start to finish, portions of the case took place in Rhode Island. Defendants' website states that they "represent [clients] regardless of where [they] live" and states that the firm "handle[s] claims in all 50 states." (Id. at ¶ 8(m).) After viewing this website, Plaintiff contacted Defendants and entered into a contract with them to represent him in his FTCA action. The contract was entered into in Rhode Island and governed by Rhode Island law. (Id. at ¶ 8(c).) This contract provided that a lawsuit would potentially be filed in Rhode Island in the future by Defendants and/or Rhode Island counsel. (Id. at ¶ 8(d).) The contract also permitted Defendants to end the representation at any time, including if Plaintiff's claim was administratively denied. (Aff. of Michael Dennett Tab 7, ECF No. 13-2.)

After Defendants engaged Plaintiff as a client, they began preparing his case. Defendants conducted an investigation into the claims from Texas by talking to various witnesses and

3

representatives in Rhode Island. (First Am. Compl. ¶ 8(g).) They sent an initial claim form to the VA in Providence. (Id. at ¶ 8(h).) Thereafter, Defendants entered into settlement negotiations with the Providence VA. (Id. at ¶ 8(i).) Eventually, at Defendants' request, Dennett's claims were administratively transferred to the VA Office of General Counsel in Washington, D.C. because the Washington office had the authority to settle for larger amounts than the Providence branch did. (Id. at ¶ 21.) These negotiations culminated in a settlement reached out of Washington, D.C. for $300,000. (Id. at ¶¶ 25, 27.) Plaintiff signed off on this agreement in Rhode Island, releasing the government from liability for his improper surgery. (Aff. of Michael Dennett ¶¶ 36-37, ECF No. 13-2.)

During settlement negotiations, Defendants promised to help Plaintiff find Rhode Island counsel to pursue claims against others responsible for the medical malpractice against him. (First Am. Compl. ¶¶ 24, 28.) Defendants then put Plaintiff in touch with his current attorneys. Ultimately, unhappy with the settlement obtained by Defendants, Dennett instituted a legal malpractice and unauthorized practice of law action against Defendants in state court. Defendants removed that lawsuit to this Court.

Thereafter, in May 2012 Defendants filed a motion to dismiss this action in its entirety arguing that they were not

4

subject to personal jurisdiction in Rhode Island. This motion was denied in January 2013. On August 2, 2013, Defendants filed the instant motion for judgment on the pleadings arguing that certain safe harbors protect them from Plaintiff's allegations concerning the unauthorized practice of law. (ECF No. 31.)

II. Discussion

 A. Standard of Review

A motion for judgment on the pleadings may not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (internal citation omitted). Where dispute about one or more material facts exists, judgment on the pleadings is not appropriate. Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 38 (1st Cir. 2004).[2] Conversely, to survive a motion for judgment on the pleadings, Plaintiff's claims must rise above the speculative level. Nationwide Life Ins. Co. v. Steiner, 722 F. Supp. 2d 179, 181 (D.R.I. 2010). Plaintiff does not face a heightened pleading standard to accomplish this task, but must merely provide "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

---

[2] Despite at times suggesting the Court look beyond the pleadings, Defendants have not requested that this motion be converted into a motion for summary judgment.

5

see also Koch v. I-Flow Corp., 715 F. Supp. 2d 297, 302 (D.R.I. 2010) (noting the Federal Rules of Civil Procedure require only "notice" pleading). Plaintiff has satisfied this burden with respect to his unauthorized practice of law claim by pleading that Defendants entered into a legal representation with him in Rhode Island, conducted legal work as part of that representation in Rhode Island, and ultimately settled the case with the final execution of the settlement taking place in Rhode Island. Defendants received a fee for this representation. During these actions, Defendants were neither licensed to practice law in Rhode Island, nor admitted to practice law pro hac vice in Rhode Island. Despite this, Defendants indicated on their website they had the ability to bring an action in any state. Through these allegations, Plaintiff has satisfied the dictates of Federal Rule of Civil Procedure 8(a).

Defendants here raise an affirmative defense arguing that they fall within statutory and rule-based safe harbors, which permit attorneys admitted to practice law in other jurisdictions to practice in Rhode Island under certain circumstances. Defendants themselves style this argument as an affirmative defense. (See Defs.' Answer to Pl.'s First Am. Compl. 9, ECF No. 28.) Plaintiff was not required to anticipate and plead around affirmative defenses raised by Defendants. See Gomez v. Toledo, 446 U.S. 635, 640 (1980).

Defendants' reliance on an affirmative defense as the basis for their motion for judgment on the pleadings suggests factual issues may be present which prevent deciding the instant motion in their favor. See 5C Wright & Miller, Federal Practice and Procedure § 1368 (3d ed. 2004). Under the Federal Rules of Civil Procedure,

> [a]ccording to Rule 7(a), the plaintiff is not required to reply to affirmative defenses or new matter appearing in the answer, and, under Rule 8(d), averments in a pleading to which no responsive pleading is required are considered by the court to have been denied. Thus, when material issues of fact are raised by the answer and the defendant seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted.

Id. In the First Circuit, "[w]here a court grants a Rule 12(b)(6) or Rule 12(c) motion based on an affirmative defense, the facts establishing that defense must: (1) be 'definitively ascertainable from the complaint and other allowable sources of information,' and (2) 'suffice to establish the affirmative defense with certitude.'" Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008) (internal citation omitted). Allowable sources of information for evaluating the defense include the complaint, the documents annexed to it, materials fairly incorporated within it, and matters susceptible to judicial notice. See Rodi v. S. New England Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

B.   Legislative and Judicial Safe Harbors

Rhode Island features dual prohibitions against the unauthorized practice of law, with both the General Assembly and Rhode Island Supreme Court prohibiting the practice of law by those not admitted to do so in the state.[3]  Specifically, the unauthorized practice of law "include[s] conduct proscribed by Chapter 11-27 of the Rhode Island General Laws, Article IV, Rule 1(d) of the Rhode Island Supreme Court Rules on the Periodic Registration of Attorneys, and Article V, Rule 5.5 of the Rhode Island Rules of Professional Conduct."  R.I. Admin. Code 63-1-1:12(1)(b).  These prohibitions also feature complimentary rules or statutes that permit out of state attorneys to practice in Rhode Island if they satisfy certain requirements.

With respect to the statutory prohibition, unauthorized practice of law is governed by R.I. Gen. Laws § 11-27-1, et.

---

[3] "It is well established that in situations in which a statute and a rule approved by the Rhode Island Supreme Court are in conflict, the court rule prevails."  Tonetti Enters., LLC v. Mendon Road Leasing Corp., 943 A.2d 1063, 1071 (R.I. 2008) (quoting Heal v. Heal, 762 A.2d 463, 467 (R.I. 2000)).  The Rhode Island General Assembly "may act in aid of" the Supreme Court's ability to make determinations concerning the practice of law, "but may not grant the right to anyone to practice law save in accordance with standards enunciated" by the court.  Unauthorized Practice of Law Comm. v. State, Dep't of Workers' Comp., 543 A.2d 662, 664 (R.I. 1988).  As such, where these dual prohibitions come into conflict, the Rhode Island Supreme Court's rule trumps the legislature's statute.  In addition, the General Assembly may not by statute grant a right to practice law where the Supreme Court's rule prohibits it.

8

seq. The pertinent provision of this law provides that no "person, except a duly admitted member of the bar of this state, whose authority as a member to practice law is in full force and effect, shall practice law in this state." R.I. Gen. Laws § 11-27-5. In relevant part, the practice of law is defined to include the drafting of pleadings, giving legal advice, and "acting as a representative . . . to commence, settle, compromise, adjust, or dispose of any civil or criminal case or cause of action." R.I. Gen. Laws § 11-27-2. The statutory safe harbor for visiting attorneys is found at R.I. Gen Laws § 11-27-13, which provides that:

> The provisions of §§ 11-27-1, 11-27-2, and 11-27-5 - 11-27-14 shall not apply to visiting attorneys at law, duly authorized to practice law before the courts of record in another state, while temporarily in this state on legal business, or while permitted to conduct or argue any case in this state according to the rules of practice of the supreme court, but no visiting attorney shall issue or indorse, as attorney, any writ of any court of this state.

Id.

The Rhode Island Supreme Court Rules regarding the unauthorized practice of law are of a more recent vintage. In 2007, the Rhode Island Supreme Court passed a series of rules, which prohibit the unauthorized practice of law and provide an exception to this proscription. As a general matter, Rhode Island Supreme Court Rules Art. V, Rule 5.5(a) dictates that "[a] lawyer shall not practice law in a jurisdiction in

violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so."  In addition, Rhode Island Supreme Court Rules Art. V, Rule 5.5(b)(2) states: "A lawyer who is not admitted to practice in this jurisdiction shall not . . . hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction."  Contrary to the argument advanced by Plaintiff, this provision relates to Rhode Island Supreme Court Rules Art. IV, Rule 1(d), which provides that anyone not admitted to practice law in Rhode Island "who practices law or who holds himself or herself out in any manner to the public or to another person as being competent, qualified, authorized or entitled to practice law in this State is engaged in the unauthorized practice of law."

An attorney admitted to practice in another state may find safety from the rule-based prohibitions under Rhode Island Supreme Court Rules Art. V, Rule 5.5(c), which allows out-of-state lawyers the privilege of practicing law in Rhode Island on a temporary basis.  Relevant to the discussion here, this safe harbor states that:

>     A lawyer admitted in another United States
> jurisdiction, and not disbarred or suspended from
> practice in any jurisdiction, may provide legal
> services on a temporary basis in this jurisdiction
> that:

10

> (1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;
>
> (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized.

R.I. Supreme Court Rules Art. V, Rule 5.5(c). Defendants stake their motion for judgment on the pleadings on the statutory and judicial safe harbors.

C. Questions of Fact Preclude Judgment on the Pleadings

The Court agrees with Plaintiff that disputes of material fact preclude entry of judgment on the pleadings in favor of Defendants. Reder, 355 F.3d at 38. At least three such factual disputes are readily apparent, each of which and together prevent Defendants from establishing their affirmative defense with "certitude." Gray, 544 F.3d at 324. First, both the legislative and judicial safe harbors require that the representation be temporary. With respect to Rule 5.5,[4]

---

[4] Defendants analogize the instant case to Hockenhull v. Law Office of Howard Lee Schiff, P.C., C.A. No. 12-415 S, 2012 WL 6525504 (D.R.I. Dec. 13, 2012). While this Court did recognize in Hockenhull that Rule 5.5 does not require admission pro hac vice on a yet-to-be-filed case, the question here is different. Id. at *3. In Hockenhull, the attorney in question ultimately sought pro hac vice admission and participated in the case. The questions here revolve around whether Defendants' representation was temporary, whether Defendants held themselves out as entitled to practice law in Rhode Island, and whether Defendants had a reasonable expectation of admission pro hac vice.

11

Defendants point to Official Comments accompanying the rule which state that a representation "may be 'temporary' even though the lawyer provides services in this jurisdiction on a recurring basis, or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation." Commentary, Rule 5.5. This comment does not provide that recurring or extended representation is always temporary under the rules. Instead, the comment itself suggests that it is a factual question whether a representation is in fact temporary. Here, Defendants' representation reflected the entire life of Plaintiff's case from inception to conclusion showing the prominence of this factual determination, which must be saved for summary judgment or trial.

Second, Plaintiff argues a question of fact exists about whether Defendants held themselves out as admitted or entitled to practice law in Rhode Island. Defendants submitted a copy of their website in an attempt to show they did not hold themselves out as admitted in Rhode Island. (Defs.' Reply Mem. of Law in Support of Their Mot. for J. on the Pleadings Ex. A, ECF No. 36-1.) Three times in their Answer, however, Defendants pled that the website Plaintiff undoubtedly looked at differed from the

---

Additionally, the Court notes that the request for judgment on the pleadings in Hockenhull was denied due to disputes of fact. Id. at *2-4.

present version.  (See Defs.' Answer to Pl's. First Am. Compl. ¶¶ 8(m)(1), 8(m)(2), 8(m)(3), ECF No. 28.)[5]  By itself, this shows that factual issues still exist because the Court cannot determine if Defendants held themselves out as entitled to practice law in Rhode Island.  In addition, the Commentary to Rule 5.5 indicates that "[i]n some circumstances, a lawyer who practices law in this jurisdiction pursuant to [the safe harbor rule] may have to inform the client that the lawyer is not licensed to practice law in this jurisdiction."  Factual issues remain about whether Defendants informed Plaintiff they were not licensed to practice law in Rhode Island.

Finally, Plaintiff argues that a factual issue exists regarding whether Defendants had a reasonable expectation of admission pro hac vice as required under Rule 5.5.  Plaintiffs have shown that Defendants' engagement agreement permitted them to withdraw from the case for several reasons, including if the case was administratively denied.  Plaintiff suggests this calls into question whether Defendants ever intended to file an action and seek admission pro hac vice or instead intended to abandon the case if it was not settled.  Defendants argue there is no

---

[5] On its face it is clear that the website differs from the one encountered by Plaintiff.  The website contains biographical information about an associate who joined AA&H in 2010.  The settlement in this case was executed in 2009, when that associate was a law clerk on the Fifth Circuit Court of Appeals. (See Defs.' Reply Mem. of Law in Support of Their Mot. for J. on the Pleadings Ex. A, ECF No. 36-1.)

evidence establishing that they ever intended to do anything but bring an action if settlement talks broke down. But at this stage, with discovery still ongoing, the Court cannot say that no factual dispute exists in this regard.

III. Conclusion

For the reasons stated above, Defendants' motion for judgment on the pleadings is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  November 19, 2013